UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| AKER KVAERNER/IHI, ET AL. | : | DOCKET NO. 2:10-cv-0278 (Lead) |
| | | 2:10-cv-1041 (Member) |
| VS. | : | JUDGE MINALDI |
| NATIONAL UNION FIRE INSURANCE COMPANY OF LOUISIANA, ET AL. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM ORDER

On February 1, 2010, plaintiffs Aker Kvaerner/IHI ("AK/IHI") filed a complaint against defendants National Union Fire Insurance Company of Louisiana; Aegis Insurance Services, Inc.; Allianz Global Risks US Insurance Company; Arch Specialty Insurance Company; and certain underwriters at Lloyd's, London ("Insurers"), seeking money damages for breach of contract and bad faith for failing to pay costs associated with damage caused by Hurricane Ike. Doc. 1, att. 1, p. 1. The complaint was filed in the 38th Judicial District Court, Parish of Cameron, State of Louisiana. *Id.* In their complaint, plaintiffs also sought damages for breach of duty and misrepresentation from McLarens Young International ("McLarens") and Navigators Management Company, Inc. ("Navigators"). *Id.* at pp. 1-2.

On February 19, 2010, removal was sought by defendant Insurers, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, and 9 U.S.C. § 203 and 205. Doc. 1. On February 24, 2010, plaintiffs put forth a motion to remand. Doc. 6. On that issue, defendants allege, and plaintiffs reject, diversity jurisdiction pursuant to 28 U.S.C. § 1332. Docs. 6, 15, 27. Defendants also

allege, and plaintiffs also reject, federal question jurisdiction pursuant to 9 U.S.C. §§ 203 and 205, and 28 U.S.C. §§ 1331 and 1441. *Id.*

On July 29, 2010, this court heard arguments pursuant to plaintiffs' motion to remand. Doc. 66. The court took those arguments under consideration. *Id.*

On August 13, 2010 this case was consolidated with a sister case baring the same issues and parties, designating this case lead.[1] Doc. 68. The member case was instigated by defendant Insurers on February 4, 2010, in the U.S. District Court for the Eastern District of Texas. Doc *1. In their complaint, Insurers sought to compel arbitration pursuant to an agreement between the parties. *Id.* June 16, 2010, Judge Lake transferred the suit to this court. Doc. *48.

Currently before the court is a motion to conduct jurisdictional discovery filed by defendant Insurers. Doc. *68.

## *Discussion*

### I.   **Diversity Jurisdiction**

To remove a case based upon diversity, the defendant "must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." *Smallwood v. Illinois Central Railroad Company*, 385 F.3d 568, 572 (5th Cir. 2004). This requires that the defendant prove that the matter is between citizens of different states and that no defendant is a citizen of the forum state. 28 U.S.C. § 1332(a)(1); *Lincoln Property Co. v. Roche*, 546 U.S. 81, 84 (2005) ("Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State."). For the purposes of diversity jurisdiction, corporations are "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ." 28 U.S.C. § 1332(c). In *Village Fair Shopping Center*

---

[1] References to the member case docket will be distinguished with an asterisk (*).

*v. Sam Broadhead Trust*, 588 F.2d 431 (5th Cir. 1979), court set out the applicable standards for determining a corporation's principal place of business under § 1332(c). *Village Fair* adopted the "total activity" test as the legal standard for determining a corporation's principal place of business, a test which calls for a review of the total corporate activity. *Id.* at 434. This test incorporates both the "place of activities" and the "nerve center" tests. *Id.* at n.3; *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 411 (5th Cir. 1987). The "nerve center" test places general emphasis on the locus of the managerial and policymaking functions of the corporation. *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862, 865 (S.D.N.Y. 1959). The "place of activities" test focuses on production or sales activities. *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234 (11th Cir. 2005). Defendants bear the burden of showing that federal jurisdiction exists and that removal from state court is proper. *Jeringan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993). Removal is to be construed narrowly and in favor of remand to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941); *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).

Here, a question exists as to both corporations' principal place of business for the purpose of § 1332. If there is not total diversity between all parties, the case must be remanded. *See e.g. Reid v. The Wailers*, 606 F.Supp.2d 627 (E.D. Va. 2009).

## II.  Subject Matter Jurisdiction

### a.  Removal Pursuant to § 1441 – General Framework

In *City of Chicago v. International College of Surgeons*, the Supreme Court described subject matter removal jurisdiction under 28 U.S.C. § 1441:

> As a general matter, defendants may remove to the appropriate federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The propriety of removal thus depends on whether the case originally could have been filed in

3

> federal court. *Caterpillar Inc. v. Williams*, 482 U.S. [386, 392 (1987)]; *Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. [1, 8 (1983)]. The district courts have original jurisdiction under the federal question statute over cases "arising under the Constitution, laws, or treaties of the United States." § 1331. "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. [58, 63 (1987)].

522 U.S. 156, 163 (1997). Thus, "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant[;] absent diversity of citizenship, federal-question jurisdiction is required." *Caterpillar Inc.*, 482 U.S. at 392. As applied to most claims arising under the Federal Arbitration Act (FAA), 9. U.S.C. § 1, *et seq.*, claims in district court require an independent basis for federal subject matter jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983); *see also Vaden v. Discover Bank*, 129 S.Ct. 1262, 1276 (2009) (holding that "a party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court"). In other words, in order to determine federal question jurisdiction, the district court must "look through" the arbitration agreement to decide whether the subject matter of the dispute being arbitrated could have been removed in its own right. *Id.* at 1266.

### b. Removal Pursuant to Statutory Exceptions to § 1441

Section 1441 contains an express statutory exception clause:

> <u>Except as otherwise expressly provided by Act of Congress</u>, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (emphasis added). Section 1441's "expressly provided" exception has been interpreted to mean that removal of even "pure" state court actions (e.g. actions that assert no federal claims whatsoever) are allowed if they are part of a comprehensive scheme created by

4

Congress to help channel cases with significant federal interests into federal court. *Banco De Santander Central Hispano, S.A. v. Consalvi Intern. Inc.*, 425 F.Supp.2d 421, 426 (S.D.N.Y. 2006) (citing *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480 (1983) (considering the constitutionality of the Foreign Sovereign Immunities Act of 1976) and *Mizuna, Ltd. v. Crossland Fed. Savings Bank,* 90 F.3d 650 (2d Cir.1996) (analyzing the Financial Institutions Reform, Recovery, and Enforcement Act of 1989)). Thus, "[p]ursuant to an express statutory exception, a district court's removal jurisdiction can be either narrower or broader than original jurisdiction." *Banco De Santander*, 425 F.Supp.2d at 425 (citing 16 Moore's Federal Practice § 107 App.113[1] (Matthew Bender 3d ed.)). If removal jurisdiction is broader, federal courts will have subject matter jurisdiction regardless of the nature of the underlying dispute. *Anderson v. American Airlines, Inc.*, 2 F.3d 590, 593-94 (5th Cir. 1993) (citing *Caterpillar*, 482 U.S. at 392); *see also Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996) (holding that the Indian Gaming Regulation Act has the extraordinary preemptive force to satisfy "complete preemption" exception to "well-pleaded complaint rule" of § 1441).

### c. Removal Pursuant to 9 U.S.C. § 205

The Convention on Recognition and Enforcement of Foreign Arbitral Awards ("Convention") "is a United Nations treaty to which the United States became a party in December 1970." *Indocomex Fibres Pte., Ltd. v. Cotton Co. Intern., Inc.*, 916 F.Supp. 721, 726, n.6 (W.D. Tenn. 1996). Congress codified the treaty's implementing law in Chapter 2 of the FAA, 9 U.S.C. §§ 1 *et seq.*, with the intent "'to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.'" *Imperial Ethiopian Government v. Baruch-Foster Corp.*, 535 F.2d 334, 335 (5th

5

Cir. 1976) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520, n.15 (1974)).  Although the Convention was codified in the FAA, its character should not be confused with that of the FAA.  The Convention was negotiated pursuant to Constitution's treaty power, while the FAA is domestic in nature.  *See generally* John A. Spanogle, *The Enforcement of Foreign Arbitral Awards in the U.S.--A Matter of Federal Law*, 13 U.S.-Mex. L.J. 97 (2005).   In implementing the Convention, Congress' enabling legislation therefore became the "highest law of the land." *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140, 1145 (5th Cir. 1985).  Thus, it has been consistently held that the Convention evokes the statutory exception to § 1441, providing federal subject matter jurisdiction regardless of the nature of the underlying dispute.  In *Sedco*, the Fifth Circuit Court of Appeals made this clear:

> [T]he Convention must be enforced according to its terms over all prior inconsistent rules of law.  [Section] 201 provides that the Convention "shall be enforced" by United States courts.  In substance, the Convention replicates the [FAA].  Indeed, § 208 of the enabling legislation for the Convention incorporates all of the Convention into Chapter 1 of Title 9.  But while the Convention requires courts of the United States to enforce arbitration clauses along lines similar to those specified in the [FAA], its reach is broader . . . .

*Id.* at 1146.

Where the subject matter of an action or proceeding pending in a state court relates to an arbitration agreement or award falling under the Convention, then, "removal of the action from state to federal court is governed not by the general removal statute, 28 U.S.C. §§ 1441 *et seq.*, but by 9 U.S.C. § 205 . . . ."  *York Hannover Holding A.G. v. American Arbitration Ass'n*, 794 F.Supp. 118, 121 (S.D.N.Y. 1992).

### d. Existence of an Arbitration Agreement

Article 9 U.S.C. § 205 provides in its pertinent part,

> Where the subject matter of an action or proceeding pending in a state court relates to an arbitration agreement or award falling under the Convention, the

6

> defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

Here, the parties dispute the existence of an arbitration agreement in their contract. If an arbitration agreement exists, as defined by the Convention, then the Convention applies and, under the terms of § 205, this Court has subject matter jurisdiction. When deciding whether an arbitration agreement exists, "the basic principle that it is for the courts to decide whether the parties have agreed to arbitrate . . . ." *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 216 (5th Cir. 2003); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 1947 (1995) (holding that where parties do not "clearly agree to submit the question of arbitrability to arbitration," the arbitrability of the dispute is "subject to independent review by the courts").

### III. Discovery

Upon a preliminary showing of jurisdiction, "[t]he decision to allow jurisdictional discovery is within the discretion of the district court." *HEI Resources, Inc. v. Venture Research Institute*, No. 09-403, 2009 WL 2634858, slip op. at 7 (N.D. Tex. Aug. 26, 2009) (citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 419 (5th Cir. 2005)). The general scope of discovery is defined by Fed. Rule Civ. Proc. 26(b)(1) as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . .

After consideration of the parties' July 29, 2010 arguments and corresponding briefs of the issues, this court finds that preliminary showing of jurisdiction exists and that discovery reasonably could lead to clarification on the jurisdictional issues involved. *See Oppenheimer*

*Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (holding that pursuant to Fed. Rule Civ. Proc. 26(b)(1), discovery is not "limited to the merits of a case" and may be utilized to gain clarification on "a variety of fact-oriented issues [that] may arise during litigation that are not related to the merits"); *see also id.* at n.15 ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."). The court therefore grants defendant Insurers' motion to conduct jurisdictional discovery [doc. *68].

### *Conclusion*

The Court orders that the parties shall have forty-five (45) days from the date of this order to conduct discovery regarding the business operations and principal place of business of defendants as well as the underwriting, negotiation, drafting, and execution of the insurance policy at issue, with emphasis on the parties understanding of the alleged "arbitration clause." Upon conclusion of this period allowed to conduct discovery, defendants shall file any opposition to plaintiffs' motion to remand within fifteen (15) days. Plaintiffs can submit a response to any opposition within ten (10) days of defendants' filing.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on December 6, 2010.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE