UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| AKER KVAERNER IHI | : | DOCKET NO. 10-CV-00278 |
| VS. | : | JUDGE MINALDI |
| NATIONAL UNION FIRE INS. CO. OF LA., ET AL | : | MAGISTRATE JUDGE KAY |

REPORT AND RECOMMENDATION
AND MEMORANDUM RULING

Before the court is the motion to compel arbitration filed by defendants National Union Fire Insurance Company of Pittsburgh, Pa.; Associated Electric & Gas Insurance Services, Ltd.; Allianz Global Risks US Insurance Company; Navigators Management Company, Inc., f/k/a Navigators Special Risk, Inc.; Arch Specialty Insurance Company (hereafter "Insurers"); and McLarens Young International (hereafter "MYI") (collectively, "Defendants"). Doc. 178. Also before the court is a cross-motion to remand and for attorneys' fees filed by plaintiff Aker Kvaerner/IHI ("AK/IHI").[1] Doc. 182.

The motion to compel arbitration was referred to the undersigned by the district court for Report and Recommendation on August 22, 2013. Doc. 180. The Motion to Remand was referred to the undersigned for ruling pursuant to usual activity assignment.

For the reasons set forth fully herein, we recommend that defendants' motion to compel arbitration should be GRANTED and the cross-motion to remand and for attorney's fees filed by AK/IHI is hereby DENIED.

---

[1] Insofar as AK/IHI's motion is, in essence, an opposition to defendants' motion, we consider them together.

# I. BACKGROUND

At issue is whether arbitration is required under the Construction All Risk (hereafter "CAR") policy issued by Insurers to Sempra Energy (hereafter "Sempra") and allegedly providing coverage to AK/IHI for losses sustained following Hurricane Ike. Doc. 182, att. 1, pp. 1–2. The facts are set forth in this court's previous ruling on jurisdiction (Doc. 157, affirmed by the district court at Doc. 176) wherein we found that General Condition 3 of the CAR policy "is and was meant to be an arbitration clause over which this court has subject matter jurisdiction pursuant to 9 U.S.C. § 205." Doc. 157, p. 18.

Defendants now move for arbitration arguing that the parties intended the arbitration provision to be broad in scope and that that the provision would cover all disputes in connection the policy. Doc. 178, att. 1, pp 2–3. AK/IHI responds through its Cross-Motion to Remand that General Condition 3 of the CAR only mandates arbitration for disputes involving the "amount of loss" and suggests that this dispute over coverage is not encompassed therein. Doc. 181, p. 2. AK/IHI additionally suggests states that its bad faith claims against Insurers and its claims against MYI—who is not a party to the CAR policy—are likewise outside the provision's scope. *Id.* Since these claims fall outside of the arbitration clause, AK/IHI argues, this court lacks subject matter jurisdiction entitling AK/IHI to remand and attorneys' fees, costs, and expenses incurred in connection with its motion. *Id.*

# II. LEGAL STANDARDS

## A. Arbitration Generally

There is a strong federal policy favoring arbitration. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960). Accordingly, when faced with a motion to compel arbitration, the court should grant the motion "unless it can be said with

positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue . . . ." *Wick v. Atl. Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979)

When deciding a motion to compel arbitration, courts conduct a limited two-step inquiry. The first step is to determine whether the parties agreed to arbitrate the dispute in question. *Mittsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 626 (1985) *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). The first step itself involves two considerations: (a) whether there is a valid agreement to arbitrate between the parties; and (b) whether the dispute in question falls within the scope of that agreement. *Webb*, 89 F.3d at 258. Once a request for arbitration has survived step one then the second step is to determine whether any federal statute or policy renders the claims nonarbitrable. *Will–Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

### B. Scope of an Arbitration Clause

Courts in the Fifth Circuit determine whether a dispute falls within the scope of an arbitration clause depending on whether the clause is "broad" or "narrow." *Pennzoil Exploration and Prod. Co. v. Ramco Energy, Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998).

A broad arbitration clause is worded in such a way that it demonstrates the intent of the parties to arbitrate an "expansive reach" of disputes. *Id.* at 1067. Broad arbitration clauses typically contain language providing for arbitration of: "any dispute or difference between the parties;" "any dispute with respect to the interpretation or performance of the contract;" or "any controversy or claim relating to the Agreement." *Quick Print of New Orleans v. Danka Office Imaging Co.*, 2004 WL 1488656 at *2 (E.D. La. 2004) (citing *Pennzoil Exploration*, 139 F.3d at 1067). When an arbitration clause is broad, any dispute "having a significant relationship to the contract" will be considered arbitrable. *Pennzoil Exploration*, 139 F.3d at 1068.

Conversely, narrow arbitration clauses allow for arbitration of only particular types of disputes. *Id.* at 1067. A narrow arbitration clause typically uses language limiting arbitration to disputes "arising out of" or "under" the contract. *Harding*, 2012 WL 4753414 at *4. When an arbitration clause is narrow, the court must determine whether the dispute at issue is contemplated by the narrow language of the clause. *Crochet Equip. Co., Inc. v. Bd. Of Cty. Comm'rs*, 20 F. Supp. 2d 987, 989 (M.D. La. 1998).

Ambiguities as to the scope of an arbitration provision are resolved in favor of an order of arbitration. *Harding*, 2012 WL 4753414 at *2. In fact, "[a] presumption of arbitrability exists requiring that whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985)."

### III. DISCUSSION

We previously concluded that there was a valid agreement to arbitrate (doc. 157 and doc. 177) and thus have dispensed with the first phase of step one. The next consideration then is whether the dispute in question falls within the scope of the agreement.

**A. The Language of General Condition 3 in the Written Contract Does Not Control**

As previously recognized, "General Condition 3 is and was meant to be an arbitration clause over which this court has subject matter jurisdiction pursuant to 9 U.S.C. § 205." Doc. 157, p. 18. This court found that evidence of the parties' negotiations leading up to the contract showed they intended to agree to arbitration even though much of the language of General Condition 3 in the final, signed document was that of an appraisal clause. Doc. 157, pp. 8–14.

AK/IHI now argues that, although this court found there to be a valid and enforceable arbitration clause, the language of General Condition 3 as written in the contract would limit the

scope of arbitration to disputes over the "amount of loss."[3]  Since the claim here is for coverage, AK/IHI argues, and not the amount of loss, the arbitration provision does not apply.

This argument ignores this court's previous finding that the  version of General Condition 3 found in the written contract was *not* what the parties intended.  This being the case then the "amount-of-loss" language of General Condition 3 in the written, final contract is not dispositive but rather we must considered the original draft of General Condition 3, the provision that we have already concluded the parties intended to be in effect.

### B. The Arbitration Clause is Narrow, but Covers the Claims at Issue

As this court previously determined, the original draft of General Condition 3 of the CAR policy is that which the parties intended to agree and that provision  reads in pertinent part as follows:

> In case the Insured and the Insurer(s) shall *fail to agree as to the amount to be paid under this Policy*, such dispute shall be referred to arbitration under the TBD Rules.  The Arbitration Panel shall consist of three arbitrators, one to be appointed by the Insured, one to be appointed by the Insurer(s) and the third to be appointed by the two appointed arbitrators.
> . . .
>
> The panel may at its sole discretion make such orders and directions as it considers to be necessary for the final determination of the matters in dispute. The panel shall have the widest discretion permitted under the law governing the arbitral procedure when making such orders or directions.
> The seat of arbitration shall be TBD.
> . . .
>
> The governing law of the contract shall be the substantive law of TBD.

Doc. 157, pp. 8–9 n. 6 (emphasis added).

---

[3] General Condition 3 States, in pertinent part:

> Arbitration
>
> If the Insured and the Underwriters fail to agree on the amount of the loss, each will, on the written demand of either, select a competent and disinterested appraiser . . . .

Doc. 157, pp. 4.

The wording of the original clause does not contain the typical language of a "broad" clause such that it would cover any and all disputes related to the policy. *See supra* Part II.B. Rather, the clause only provides for arbitration when the parties "shall fail to agree on the amount to be paid under this Policy." Accordingly the clause is properly characterized as narrow. Courts have considered as narrow similar clauses that provide for arbitration of disputes "arising out of" or "under" a contract. *See supra* Part II.B. Because the clause at issue is narrow, it is incumbent upon this court to look to the claims at issue and determine whether they fall under the language of the original clause. *Id.*

For the reasons that follow we conclude that that the instant claims are within the scope of the original arbitration agreement. In doing so we are mindful that "[a] presumption of arbitrability exists requiring that whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." *Mar-Len*, 773 F.2d at 635; *see also Wick*, 605 F.2d at 168 (holding that arbitration should be ordered "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue").

**1. Coverage Dispute**

The dispute over coverage is clearly contemplated by the arbitration clause. Indeed, it is difficult to imagine a more fundamental dispute over "the amount to be paid under [the] Policy" than when the insured claims that $24 million is due and the insurers respond that $0 is due. *See* doc. 182, p. 11. As this court made clear, the parties intended to arbitrate disputes over coverage, not just disputes over appraisals. Doc. 157, pp. 12–14. AK/IHI apparently argues that a dispute over whether *any* amount is to be paid under the policy is *not* arbitrable, but a dispute

over *how much* will be paid *is* arbitrable. Such an interpretation of the arbitration clause would be contrary to the parties' intentions.[4]

In the previous ruling, this court noted several facts that it found determinative in finding that the parties intended to arbitrate coverage disputes. First, each insurer submitted affidavits stating that it was their understanding that all disputes regarding the policy would be arbitrated in New York. *See* doc. 157, p. 12. Second, Sempra's representative was not aware until his deposition that the original arbitration provision had been changed. *Id.* Third, when AK/IHI received and reviewed the original arbitration clause, it did not express any concerns over its wording or scope. *Id.* at 12–13. Finally, the fact that the parties chose New York as both the seat of arbitration and the substantive law to govern the contract suggested that the parties wished to arbitrate coverage disputes under New York law. *Id.* at 13.

Based upon the language of the clause and the evidence of the parties' intentions, the undersigned concludes that the parties' dispute over coverage is arbitrable.

### 2. Bad-Faith Claims Against Insurers

AK/IHI argues that its statutory claims for bad faith against Insurers are not arbitrable. Doc. 182, pp. 13–14. Once again AK/IHI relies on the language of General Condition 3 found in the written contract, the language we have previously found to be inapplicable, to make this

---

[4] In the previous ruling, this court applied New York law (the choice of law in the CAR insurance policy) to determine that the terms of the contract were ambiguous. *Andy Warhol Found. for the Visual Arts, Inc., v. Fed. Ins. Co.,* 189 F.3d 208, 215 (2d Cir. 1999). This court based that determination on the fact that jurisdictional discovery was required in order to understand "the underwriting, negotiation, drafting, and execution of the insurance policy at issue, with emphasis on the parties understanding of the alleged 'arbitration clause.'" Doc. 71, p. 8. Thus, having determined that General Condition No. 3 was ambiguous, the court looked to extrinsic evidence to ascertain the intent of the parties. *International Klafter Co. v Continental Casualty Cdo.,* 869 F.2d 96, 100 (2d Cir.1989). To determine intent, the court "[looked] to the contract as a whole and the parties' conduct, as well as any evidence of surrounding facts and relevant circumstances, industry practice and course of dealing." *Barnes v Am. Int'l Life Assurance Co. of N.Y.,* 681 F. Supp.2d 513, 521(S.D.N.Y. 2010) (citing *Bourne v Walt Disney Co.,* 68 F.3d 621, 627-29; *U.S. Naval Inst. V. Charter Commc'ns, Inc.,* 875 F.2d 1044, 1048-49 (2d Cir.1989)). The same basis for looking to the parties' intentions applies equally to the current motion.

argument. *Id.* Once again reliance on that language is misplaced. Nevertheless we co consider whether bad faith claims are arbitrable under the wording the parties intended to apply.

The parties chose the substantive laws of New York as the governing law of the contract. Doc. 157, p. 12. Under New York law, "a bad faith claim is treated as a breach of the underlying contract for the purposes of applying a choice of law provision." *Commerce and Indus. Ins. Co. v. U.S. Bank Nat'l Ass'n*, 2008 WL 4178474 at *4 (S.D.N.Y. 2008). When a bad-faith claim is "inextricably intertwined" with matters of contract interpretation, *see Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 218 (1985), "an unnecessarily confusing situation would result if the law of one state is used to interpret the insurance agreement regarding the breach of contract claim and the law of a second state is applied to interpret the same agreement with regard to the bad faith claim." *Commerce and Indus. Ins.*, 2008 WL 4178474 at *4 (internal quotations and citations omitted). Accordingly, when the parties choose the law of a certain state to govern the contract, the law of that state will govern both the contract and bad faith claims. *Id.* at 5.

Here AK/IHI asserted bad-faith claims against Insurers under Louisiana statutory law. Doc. 1, att. 1, pp. 12–13. However, it is evident that the parties intended the laws of New York to govern the contract, including claims for breach of contract and bad faith, and that the parties intended to arbitrate disputes over "the amount to be paid under [the] Policy" pursuant to New York law. *See supra* Part III.B.1. AK/IHI's claims for breach of contract and bad faith are "inextricably intertwined" such that one cannot be resolved without the other. It was certainly not the intention of the parties to allow New York law to govern disputes over the amount to be paid under the Policy,but the laws of another state to be asserted if AK/IHI alleged bad faith. Such a result is contrary to New York law and the intentions of the parties. Accordingly, the

undersigned concludes that AK/IHI's claims for bad faith are within the scope of the arbitration clause, and will be arbitrated under the laws of New York as provided therein.

### 3. Claims Against MYI

Finally, AK/IHI argues that its claims for breaches of duty and misrepresentation against MYI are not arbitrable. AK/IHI bases this argument on the fact that MYI was not a party to the CAR policy and there was no separate agreement to arbitrate between AK/IHI and MYI. Doc. 182, p. 14. Defendants, relying on *Grigson v. Creative Artists Agency*, 210 F.3d 524, 527–528 (5th Cir. 2000), respond that Fifth Circuit precedent allows non-parties to an arbitration agreement to compel arbitration in certain circumstances and that those circumstances are found here. Doc. 184, pp. 7–10.

In *Grigson*, the court held that under the doctrine of equitable estoppel, a non-signatory may compel a signatory to arbitrate in two different circumstances. 210 F.3d at 527. The *Grigson* court stated:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. *First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.* When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. *Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.*

*Id.* (emphasis in original).

In the instant case, AK/IHI claims that MYI, as the "nominated loss adjustor" of Insurers, breached numerous duties it owed to AK/IHI. Doc. 1, att. 1, pp. 8–11. AK/IHI claims that MYI

breached its duties to adequately investigate AK/IHI's claim, including its duty to "properly represent to [Insurers] and AK/IHI the scope, extent, and nature of the property damage and the terms of the CAR policy that applied to the property damage." *Id.* at 8, ¶ 56. AK/IHI further alleges that a MYI representative performed a one-day inspection of the site and promised to return with experts "in force," yet this representative never returned because he erroneously concluded that the alleged loss would not exceed the CAR policy's deductible. *Id.* at 9, ¶¶ 61–62. Next, AK/IHI alleges that MYI mischaracterized its losses as "consequential" and this mischaracterization caused Insurers to interpret the CAR policy as excluding AK/IHI's losses. *Id.* at 10–11, ¶¶ 65–69, 71. Finally, AK/IHI argues that MYI unreasonably recommended to Insurers that they deny coverage to AK/IHI under the CAR policy. *Id.* at 11, ¶ 71.

    Defendants argue that AK/IHI's claims against MYI satisfy both situations described by *Grigson* because the claims: (a) expressly rely on the terms of the CAR policy; and (b) allege substantially interdependent and concerted conduct between MYI and Insurers. Doc. 184, p. 9. AK/IHI argues that *Grigson* does not apply because the claims against MYI sound in tort law and do not "rely" on the CAR policy. Doc. 186, p. 4. Furthermore, AK/IHI argues that its claims against MYI are separate and distinct from its claims against Insurers and thus the claims do not allege interdependent and concerted conduct. *Id.* at 4–5.

    We conclude that both circumstances of *Grigson* are present here and therefore MYI may compel arbitration. First the claims "rely" on the policy insofar as all of the claims make reference to or presume the existence of the agreement itself. *Palmer Ventures, LLC v. Deutsche Bank, AG*, 254 Fed. App'x 426, 431 (5th Cir. 2007). For example, AK/IHI claims that MYI breached its duty to "properly represent . . . the terms of the CAR policy" to AK/IHI. Doc. 1, att. 1, p. 8. The basis of that allegation is a breach of the CAR policy, and not a breach of any

independent tort duty.[5]  AK/IHI's other claims against MYI—the crux of which are that MYI erroneously valued the claim and erroneously recommended that Insurers deny coverage—are likewise matters of contract interpretation and not tort claims.  As such, the claims rely on the policy under the meaning of *Grigson*.

The second circumstance of *Grigson* is met because the claims against MYI allege substantially interdependent and concerted conduct between MYI and Insurers.  Again, all of AK/IHI's claims center on MYI's alleged misconduct as Insurers' "nominated loss adjustor." Doc. 186, p. 5.  As such, AK/IHI's claims against MYI must be considered the same as its claims against Insurers.[6]  The issues between AK/IHI and MYI cannot be resolved without also involving the Insurers, as MYI acted as Insurers disclosed agent.[7]  The claims against MYI thus allege substantially interdependent and concerted misconduct between Insurers and MYI.

Under *Grigson*, MYI may compel arbitration under the original arbitration clause covering disputes over "the amount to be paid under this policy."  Based upon the evidence submitted, it is clear the parties intended to refer a dispute over a claim adjustment to arbitration.

---

[5] Neither Louisiana nor New York law recognizes a tort claim against an insurance adjuster when the adjuster acts as a disclosed agent of the insurer, except in certain limited circumstances such as fraud and misrepresentation of authority. See, e.g., *RDS Inc. v. GAB Robins N. Am., Inc.*, 2005 WL 2045956 at *3 (W.D. La. 2005); *Edwards v. Allstate Prop. & Cas. Co.*, 2005 WL 221560 at *3 (E.D. La. 2005); *Ryan v. Preferred Mut. Ins. Co.*, 834 N.Y.S.2d 338, 339–40 (N.Y. App. Div. 2007); *Bardi v. Farmers Fire Inc. Co.*, 687 N.Y.S.2d 768, 787 (N.Y. App. Div. 1999). AK/IHI does not allege that MYI acted fraudulently or abused its position as loss adjustor in such a manner as to give rise to an independent breach of a duty owed to AK/IHI; rather, the claims simply complain of MYI's conduct as the nominated loss adjuster.

[6] AK/IHI cites *Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP*, 735 F. Supp. 2d 503, 512–13 (N.D. Tx. 2010), for the proposition that its claims against MYI for misrepresentation arose from independent duties owed by MYI. Doc. 186, p. 4. However, *Vinewood* is distinguishable in that it did not involve a claim against an insurance adjuster regarding the handling of a claim under the policy.

[7] *See supra* note 5.

## IV. CONCLUSION

For the foregoing reasons, we recommend that defendants' motion to compel arbitration be GRANTED. We further conclude that AK/IHI's cross-motion to remand and for attorney's fees be and the same is hereby DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this Report and Recommendation have 14 business days from service of this order to file specific, written objections with the clerk of court. A party may respond to another party's objections within 14 days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this order 14 days following the date of its service, or within the time frame authorized by shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

THUS DONE this 2nd day of December, 2013.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE