RECEIVED
IN LAKE CHARLES, LA.
FEB 10 2014
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| AKER KVAERNER/IHI | * | CIVIL ACTION NO. 2:10-CV-00278 |
| | * | (LEAD CASE) |
| Plaintiff | * | |
| | * | |
| V. | * | |
| | * | JUDGE MINALDI |
| NATIONAL UNION FIRE INSURANCE | * | |
| COMPANY OF LOUISIANA, ET AL. | * | |
| | * | |
| Defendants | * | MAGISTRATE JUDGE KAY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONSOLIDATED WITH

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE | * | CIVIL ACTION NO. 2:10-CV-1041 |
| COMPANY OF PITTSBURGH, | * | (MEMBER CASE) |
| PENNSYLVANIA, ET AL. | * | |
| | * | |
| Plaintiffs | * | |
| | * | JUDGE MINALDI |
| V. | * | |
| | * | |
| AKER KVAERNER/IHI | * | |
| | * | |
| Defendant | * | MAGISTRATE JUDGE KAY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM RULING

Before the court is the Report and Recommendation [Doc. 187] of the Magistrate Judge, recommending that the Motion to Compel Arbitration [Doc. 178], filed by National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Associated Electric & Gas Insurance Services, Ltd., Allianz Global Risks U.S. Insurance Company, Commonwealth Insurance Company, Navigators Management Company, Inc., f/k/a Navigators Special Risk, Inc., Arch Specialty Insurance Company (Insurers) and McLarens Young International (M.Y.I.) (collectively, defendants), be granted, and that Aker Kvaerner/I.H.I's cross motion to remand and for attorney's fees be denied. Aker Kvaerner/I.H.I. (plaintiff) has filed Objections [Doc. 188], to

1

which the defendants have filed a Response [Doc. 195]. For the following reasons, as well as those reasons set forth in the Report and Recommendation [Doc. 187] of the Magistrate Judge previously filed herein, after an independent review of the record, a *de novo* determination of the issues, consideration of the objections filed herein, and having determined that the findings are correct under applicable law,

**IT IS ORDERED** that the defendants' Motion to Compel Arbitration [Doc. 178] be and hereby is **GRANTED**.

## FACTS & PROCEDURAL HISTORY

The plaintiff filed a complaint against the defendants in the 38th Judicial District Court for the Parish of Cameron on January 22, 2010, seeking money damages for breach of contract and bad faith under a Construction All Risk Insurance Policy (CAR Policy).[1] The lawsuit arose from damage allegedly caused by Hurricane Ike.[2]

According to the initial state court complaint, Cameron L.N.G., L.L.C. (Cameron), a subsidiary of Sempra Energy, was the owner of the project, and Cameron contracted with the plaintiff in 2004 to erect various constructions (a marine terminal, storage tanks, and related facilities) for approximately $470 million.[3] The majority of the work was apparently complete when Hurricane Ike struck the construction site on September 10, 2008, causing extensive damage; as a result, the plaintiff allegedly incurred in excess of $44 million to remedy and repair the damaged property.[4] The central underlying dispute herein stems from a dispute over coverage of hurricane damages that are allegedly covered under the policy.

---

[1] Compl. [Doc. 1-1], at 1, ¶ 1.
[2] *Id.* at ¶ 3.
[3] *Id.* at ¶ 21-22.
[4] *See* Compl. [Doc. 1-1], at ¶¶ 25-40.

The case was subsequently removed by the defendants, invoking 28 U.S.C. §§ 1331, 1332, 1441 and 1446, and 9 U.S.C. §§ 203 and 205, on February 19, 2010.[5] Since that time, there have been voluminous filings pertaining to the appropriate forum in which to litigate this dispute.

The plaintiff filed a Motion to Remand [Doc. 6] on February 24, 2010. On July 30, 2010, the defendants filed a Motion for Leave to Conduct Jurisdictional Discovery [Doc. 68 in case no. 2:10-cv-01041].[6] The objective of that discovery motion was to seek evidence which would elucidate 1) whether General Condition 3 of the Policy was a valid and enforceable arbitration agreement, and, if so, 2) what the scope of that agreement was.[7] This information was relevant because, as aptly stated by the Magistrate Judge, courts conduct a two-step inquiry in assessing a motion to compel arbitration which inquires first whether a valid agreement to arbitrate exists, and secondly whether the dispute in question falls within the scope of that agreement.[8] The defendant-insurers sought "documents and testimony from Sempra related to the underwriting submission, as well as the negotiation, drafting and execution of the Policy."[9]

The member case originated in the United States District Court for the Southern District of Texas.[10] In the order transferring the case to the Western District of Louisiana, Judge Lake

> conclude[d] that General Condition Three in the Policies is an agreement to arbitrate something. The clause is titled "Arbitration," and the text of the clause uses the term "arbitration" five times. It specifies that "[t]he seat of the arbitration shall be the State of New York." These references show the intent of the parties to arbitrate at least a certain category of disputes.
> What is less clear is "whether the dispute in question falls within the scope of that arbitration agreement."[11]

---

[5] Not. of Removal [Doc. 1], at 1.
[6] Unless otherwise indicated, as here, all document numbers refer to the lead case.
[7] Mot. for Leave to Conduct Jurisdictional Discovery [Doc. 68 in case no. 2:10-cv-01041], at ¶ 2.
[8] *See* Report and Recommendation and Memo. Ruling [Doc. 187], at 3 (*citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)).
[9] Mot. for Leave to Conduct Jurisdictional Discovery [Doc. 68 in case no. 2:10-cv-01041], at ¶ 8.
[10] *See generally* Memo. Opinion and Order [Doc. 48 in case no. 2:10-cv-1041].
[11] *Id.* at 11 (internal citations omitted).

This case was then consolidated with the member case [case no. 2:10-cv-01041], a case bearing the same issues and parties, on August 13, 2010.[12] On December 6, 2010, the Magistrate Judge issued a written ruling[13] granting the defendants' Motion seeking to conduct additional discovery. In that ruling, the Magistrate Judge correctly noted first that the parties herein presented a dispute over the existence of an arbitration agreement, and that, if such an agreement existed, then jurisdiction would exist under 9 § U.S.C. 205.[14] The Magistrate Judge thereafter ordered discovery "regarding . . . the underwriting, negotiation, drafting, and execution of the insurance policy at issue, with emphasis on the parties' understanding of the alleged 'arbitration clause.'"[15]

The plaintiff appealed the decision of the Magistrate Judge.[16] This appeal was subsequently denied as moot following extensive discovery.[17] The Magistrate Judge then issued an opinion[18] denying the plaintiff's Motion to Remand and Motion for Attorney's Fees [Doc. 6]. In that ruling, the Magistrate Judge stated:

> [a]pplying New York law, the choice of law in the CAR insurance policy,[19] this court must initially make the determination of whether the terms of the contract are ambiguous. *Andy Warhol Found. For the Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999).

---

[12] *See* Not. of Consolidation [Doc. 68].
[13] *See generally* Memo. Order [Doc. 71].
[14] Memo. Order [Doc. 71]. See also 9 U.S.C. § 205, which states that
> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title [9 USCS §§ 1 et seq.] any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

[15] Memo. Order [Doc. 71], at 8.
[16] *See generally* Appeal of Magistrate Judge Decision [Doc. 75].
[17] *See* Memo. Ruling [Doc. 118].
[18] Memo. Ruling, [Doc. 157], at 1.
[19] *Id.* (*citing* Doc. 6, Att. 3, Ex. E, P. 6).

Previously, this court ruled that jurisdictional discovery was required in order to understand "the underwriting, negotiation, drafting, and execution of the insurance policy at issue, with emphasis on the parties' understanding of the alleged 'arbitration clause.'" Doc. 71, p. 8. Thus, *having determined* that General Condition No. 3 *is ambiguous*, the court may look to extrinsic evidence to ascertain the intent of the parties. *International Klafter Co. v. Continental Casualty Co.*, 869 F.2d 96, 100 (2d Cir. 1989).[20]

The plaintiff again appealed the decision of the Magistrate Judge,[21] and the undersigned issued a Memorandum Ruling [Doc. 176] which affirmed the Magistrate Judge's ruling in its entirety.[22] In that ruling, this court stated that "[t]he Magistrate Judge found the [General Condition 3] clause ambiguous. Applying New York law, the Magistrate Judge then determined the intent of the parties. . . . Her conclusion that General Condition 3 is an arbitration clause is not clearly erroneous."[23]

The defendants then filed a Motion to Compel Arbitration [Doc. 178]. The Magistrate Judge's Report and Recommendation and Memorandum Ruling [Doc. 187] recommends that the instant Motion be granted. This Report and Recommendation is presently before the court.

## LAW & ANALYSIS

The court writes today only to briefly supplement certain aspects of the Magistrate Judge's Report and Recommendation, particularly pertaining to the discussion of the ambiguity of the contract provision in question, as well as to respond to some of the matters raised by the plaintiff in its Objections to the Magistrate Judge's Report and Recommendation [Doc. 188].

The review of Orders and Recommendations by the Magistrate Judge is provided for in the Federal Rules of Civil Procedure. Rule 72(a) states that, for nondispositive matters, the district judge "must consider timely objections and modify or set aside any part of the order that

---

[20] *Id.* at 7 (emphasis added).
[21] Appeal of Magistrate Judge Decision [Doc. 165].
[22] Memo. Ruling [Doc. 176], at 6.
[23] *Id.* at 4.

5

is clearly erroneous or is contrary to law." FED. R. CIV. PRO. 72(a). "A finding is 'clearly erroneous' when there is no evidence to support it, or if the reviewing court, after assessing all of the evidence, is left with the definite and firm conviction that a mistake has been committed." *Baldwin v. Taishang Gypsum Co., Ltd. (In re Chinese-Manufactured Drywall Prods. Liab. Litig.)*, No. 10-30568 c/w 12-31017, 2014 U.S. App. LEXIS 1728, at *15 (5th Cir. Jan 28, 2014) (citations omitted).

The crux of the plaintiff's argument herein is that "the Magistrate Judge re-wrote General Condition 3 based upon a draft provision that was never part of the underwriting process, was never even argued as applicable by any party in this action, and, contrary to the Report and Recommendation, was never previous [sic] held to apply."[24]

General Condition 3 states as follows:

Arbitration

If the Insured and the Underwriters fail to agree on the amount of the loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

a. The Insured has fully complied with all provisions of this Policy; and

b. The Underwriters have received a signed and sworn proof of loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within thirty (30) days then, on the request of the Insured or the Underwriters, the umpire will be selected by a judge of a court of record in the jurisdiction in which the arbitration is pending. The appraisers will then appraise the amount of loss, stating separately the Actual Cash Value and replacement cost value as of the date of loss and the amount of loss for each item of physical loss or damage coverage of this Policy.

---

[24] Objections [Doc. 188], at 6.

6

> If the appraisers fail to agree they will submit their differences to the umpire. An award agreed to in writing by any two (2) will determine the amount of loss.
>
> The Insured and the Underwriters will each:
>
> a. Pay its chosen appraiser.
>
> b. Bear equally the other expenses of the <u>arbitration</u> and umpire.
>
> A demand for <u>arbitration</u> shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy.
>
> The Underwriters will not be held to have waived any of its rights by any act relating to <u>arbitration</u>.
>
> The Insured and the Underwriters shall each bear the expenses of their own appraisers and shall bear equally the expenses of the umpire.
>
> The seat of <u>arbitration</u> shall be the State of New York.[25]

The February 6, 2010, ruling of the Magistrate Judge ordered discovery on issues of contract interpretation.[26] It was this Order upon which both the Magistrate Judge and the undersigned later relied in stating that it had already been determined that the contract in question was ambiguous.[27] However, as the reasons behind the finding of ambiguity were never fully espoused upon, the court finds it appropriate to do so now.

In determining ambiguity, "the threshold decision on whether a writing is ambiguous is the exclusive province of the court." *Sutton v. E. River Sav. Bank*, 55 N.Y.2d 550, 554 (N.Y. 1982) (citation omitted). Under New York law, "[w]hether a contract is ambiguous is a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous." *S. Rd. Assocs., L.L.C. v. I.B.M.*, 4 N.Y.3d 272, 278 (N.Y. 2005) (*citing Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (N.Y. 2002)). *See also Wallace v. 600 Partners Co.*, 86 N.Y.2d 543, 548 (N.Y. 1995) (citation omitted) (stating that "[t]he question whether a writing is

---

[25] *See* Memo. Ruling [Doc. 157], at 4-5 (emphasis added).
[26] Memo. Order [Doc. 71], at 8.
[27] Memo. Ruling [Doc. 157], at 7; *see also* Memo. Ruling [Doc. 176], at 4.

7

ambiguous is one of law to be resolved by the courts"). Moreover, extrinsic evidence may not be employed in a manner so as to create an ambiguity where none before existed. *Id.* (citation omitted). "A written agreement is ambiguous only if it is reasonably susceptible of more than one interpretation." *R.M. Realty Holdings Corp. v. Moore*, 64 A.D.3d 434, 436 (N.Y. App. Div. 2009) (*citing Chimart Assoc. v. Paul*, 66 N.Y.2d 570, 573 (N.Y. 1986)) (emphasis deleted).

Here, the court agrees with the initial analysis of Judge Lake—General Condition 3 is an arbitration clause.[28] It is entitled "Arbitration," contains multiple references to arbitration, and sets the seat of arbitration as the State of New York. However, significant ambiguity persists as to the scope of the clause. The plaintiff spent a great deal of time arguing that the clause in question was one of appraisal only, and not arbitration.[29] Further, the plaintiff argued that the clause was only triggered in the event that the dispute concerned "the amount of loss."[30] The court disagrees.

The clause in question does state that appraisers will be selected if there is disagreement on the amount of loss. However, the first mention of arbitration in the clause, other than the clause's title, is within a section detailing a procedure for selecting an "umpire" to aid in the appraisal "by a judge of a court of record in the jurisdiction *in which the arbitration is pending.*"[31] Curiously, though, there is no indication as to how, when, or under what circumstances an arbitration would be pending. Even if the court is to accept the plaintiff's contention that the language specifically describing the appraisal process only pertains to disputes over the amount of loss, there is no similar language indicating what precisely triggers arbitration in the so-called "Arbitration" clause. This is curious given how many references to

---

[28] *See supra* note 10.
[29] *See* Memo. Ruling [Doc. 157], at 5 (discussing the plaintiff's arguments in this regard).
[30] *Id.*
[31] *See supra* note 25 (emphasis added).

arbitration appear in the contract language. This creates significant ambiguity on the face of the contract over whether this is meant to be a broad or a narrow arbitration clause.[32] Furthermore, there are multiple, similar references to arbitration interwoven throughout the appraisal procedure language, but no information pertaining to what issues are actually subject to arbitration. Given this ambiguity—the multitude of interpretations to which the clause in question is susceptible, and the unspoken to circumstances which would thereby trigger arbitration—the consideration of extrinsic evidence by the Magistrate Judge to ascertain the intent of the parties was entirely appropriate.[33]

The Magistrate Judge's prior opinion relied, among other things, upon the language in the "draft" of the arbitration clause that circulated between Sempra, Sempra's broker (Willis), and the plaintiff.[34] The plaintiff now argues in his Objections that this draft cannot be evidence of

---

[32] *See* Report and Recommendation and Memo. Ruling [Doc. 187], at 3-4.
[33] *See generally* Memo. Order [Doc. 71].
[34] Memo. Ruling [Doc. 157], at 8 n.6. The arbitration clause in the draft stated:

> In case the Insured and the Insurer(s) shall fail to agree as to the amount to be paid under this Policy, such dispute shall be referred to arbitration under the **TBD** Rules. The Arbitration Panel shall consist of three arbitrators, one to be appointed by the Insured, one to be appointed by the Insurer(s) and the third to be appointed by the two appointed arbitrators.
>
> The third member of the Panel shall be appointed as soon as practicable (and no later than 28 days) after the appointment of the two party-appointed arbitrators. The Panel shall be constituted upon the appointment of the third arbitrator.
>
> The arbitrators shall be persons (including those who have retired) with not less than ten years experience of Insurance or reinsurance within the Industry or as lawyers or other professional advisers serving the industry.
>
> Where a party fails to appoint an arbitrator within 14 days of being called upon to do so or where the two party-appointed arbitrators fail to appoint a third within 28 days of their appointment, then upon application **TBD** will appoint an arbitrator to fill the vacancy. At any time prior to the appointment by **TBD** the party or arbitrators in default may make such appointment.
>
> The panel may at its sole discretion make such orders and directions as it considers to be necessary for the final determination of the matters in dispute. The panel shall have the widest discretion permitted under the law governing the arbitral procedure when making such orders or directions.
>
> The seat of arbitration shall be **TBD**.

the parties' intent because the original draft language was never shared with the defendant-insurers.[35] However, as the Magistrate Judge found, this is belied by the fact that, the draft language was changed sometime prior to June 6, 2005, by Kevin Sparks, an employee of Willis, and it was changed without the instruction or direction of any party to the CAR policy.[36] Therefore, put simply, if Sempra, Willis and the plaintiff agreed on the original draft language, and that language was subsequently changed by Sparks without direction from any of the aforementioned entities, then the draft language is, at the very least, evidence of the intent of the aforementioned entities and thus may be properly used as extrinsic evidence in construing an ambiguous contract provision. As for the defendants, there is ample evidence in the record to demonstrate their intent to arbitrate any and all disputes under the policy.[37]

Although the Magistrate Judge's assertion that "the language of general condition 3 in the written contract does not control,"[38] may have oversimplified the issue, this statement is, in a practical sense, correct, in that the contract's ambiguity opens the door to the introduction of extrinsic evidence in order to aid in the interpretation of the contract. The extrinsic evidence includes prior contract draft language which is clearer on the issue of the scope of the arbitration provision than is the final version of General Condition 3. As such, the court does not find that the Recommendation of the Magistrate Judge is either clearly erroneous or contrary to law such that a contrary finding would be warranted. Accordingly,

---

    The language to be used in the arbitral proceedings shall be English.

    The governing law of the contract shall be the substantive law of **TBD**.
*Id.* (emphasis in original).
[35] Objections [Doc. 188], at 17.
[36] Memo. Ruling [Doc. 157].
[37] *See, e.g.*, Aff. of Nigel Jobson, underwriter for Commonwealth Ins. Co. [Doc. 25-6], at ¶¶ 3-6; *see also* Aff. of Scott W. Christy, underwriter for Navigators Ins. Servs. of Texas [Doc. 25-7], at ¶ 4.
[38] Report and Recommendation and Memo. Ruling [Doc. 187], at 4.

For the foregoing reasons, and the reasons set forth in the Report and Recommendation of the Magistrate Judge [Doc. 187] previously filed herein, after an independent review of the record, a *de novo* determination of the issues, consideration of the objections filed herein [Doc. 188], as well as the defendants' Response [Doc. 195], and having determined that the findings of the Magistrate Judge are correct under applicable law,

**IT IS ORDERED** that the defendants' Motion to Compel Arbitration [Doc. 178] be and hereby is **GRANTED**, and all disputes in this matter are hereby referred to arbitration.

Lake Charles, Louisiana, this 7 day of February, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE